UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK FERNANDO MADRID,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:19-cv-1421-KJM-KJN<br><br>FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 17, 23) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying an application for Disability Insurance Benefits under Title II of the Social Security Act.[1] In his summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred by relying on his own lay opinion over the medical record evidence, and by improperly rejecting plaintiff's symptom testimony and the diagnoses of his physicians.  The Commissioner filed an opposition and cross–motion for summary judgment.

The court FINDS the ALJ failed in formulating plaintiff's residual functional capacity. Thus, the court RECOMMENDS the Commissioner's motion for summary judgment be denied, plaintiff's motion for summary judgment be granted in part, and the case be remanded for further proceedings.

---

[1] This action was referred to the undersigned for resolution as findings and recommendations, pursuant to Local Rule 302(c)(15).  (See ECF Nos. 5, 9.)

1

I. **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

On March 31, 2016, plaintiff filed a claim for disability, alleging an onset date of November 15, 2015. (See Administrative Transcript ("AT") 80.) Plaintiff listed as medical conditions the following: "Back Injury; Diabetes." (AT 78.) Plaintiff's application was denied initially and again upon reconsideration. (AT 77-84; 86-93.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 110.) At an April 17, 2018 hearing, plaintiff testified about his conditions, and the ALJ heard testimony from a vocational expert regarding the plaintiff's employment prospects. (AT 27-76.)

On June 25, 2018, the ALJ issued a decision determining plaintiff was not disabled from his onset date through the present. (AT 13-22.) At Step One, the ALJ concluded plaintiff had not engaged in substantial gainful activity since November 15, 2016, his alleged disability onset date. (AT 15.) At Step Two, the ALJ found plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, diabetes with peripheral neuropathy, and obesity. (Id.) However, the ALJ determined at Step Three that plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1. (Id.) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).)

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987). The following summarizes the sequential evaluation:
> **Step One**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step Two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step Three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step Tour**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

The ALJ found plaintiff had the residual functional capacity ("RFC") to perform medium work, except that he "needed to change positions once per hour for stretch breaks of 5 minutes." (AT 16.) In reaching this conclusion, the ALJ stated she considered plaintiff's symptom testimony and the objective medical evidence in the record. (Id.) Relevant here, the ALJ found that plaintiff's testimony regarding the intensity and persistence of his symptoms was inconsistent with the medical and other evidence in the record. (AT 16.) To support her conclusions, the ALJ primarily relied upon the "minimal and sporadic medical records" available, including various examinations and diagnoses between November 2015 and December 2017. (AT 17-20.) The ALJ rejected the only two medical source opinions in the record (the two state-agency physicians who reviewed plaintiff's claim initially and upon reconsideration), as those doctors errantly disregarded most of the medical evidence due to a coding error in the Commissioner's system. (AT 17.) Ultimately, the ALJ concluded at Step Four that while plaintiff was incapable of performing his past relevant work, he could perform other jobs existing in significant numbers in the national economy. (AT 21.)

On May 23, 2019, the Appeals Council denied plaintiff's request for review. (AT 1-6.) Plaintiff then filed this action within sixty days, requesting judicial review of the Commissioner's final decision; the parties filed cross–motions for summary judgment. (ECF Nos. 1, 17, 23, 25.)

## II.   STANDARD OF REVIEW

The court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F.3d at 1048.

### III.     ISSUES PRESENTED

Plaintiff contends the ALJ's decision is based on legal error not supported by substantial evidence. First, plaintiff argues the ALJ inappropriately translated raw medical data into functional terms without the aid of any medical source statements. Plaintiff notes the ALJ (correctly) gave little weight to the two state-agency opinions because of a coding error, but then had no other physician's opinion on which to rely when translating his impairments into the RFC. This shortcoming led to the ALJ allegedly relying on her own lay opinion of the evidence and ignoring certain diagnoses from plaintiff's physicians, which plaintiff contends is error. Second, plaintiff argues the ALJ improperly rejected his symptom testimony. The ALJ stated she did so based on the medical evidence as well as "the state agency sources and consultative examiners [who] found [plaintiff] capable of full range of [] medium work." Plaintiff contends this conclusion is vague and circular, given that the ALJ had earlier (correctly) rejected the state-agency sources and that the record was otherwise absent of any medical source statements. Plaintiff argues that when his symptom testimony and the diagnoses of his physicians are credited as true, the only remedy is to remand for benefits. (ECF No. 17.)

The Commissioner argues the ALJ adequately supported her RFC findings, as it is within her purview to formulate the RFC, and plaintiff failed in his burden to proffer evidence supporting his claims. The Commissioner notes the ALJ reviewed the evidence in the record and found plaintiff's physical examinations reflected normal and unremarkable diagnoses. Further, the Commissioner argues the ALJ sufficiently detailed why she properly discounted plaintiff's symptom testimony, as the sparse evidence in the record demonstrated a history of conservative treatment. Thus, the Commissioner argues the decision is free of legal error and supported by substantial evidence, which should result in affirmance. Alternatively, the Commissioner argues any finding for plaintiff should result in a remand further proceedings, as plaintiff challenges ambiguity in the decision. (ECF No. 23.)

///

///

///

IV. **DISCUSSION**

    **A. The ALJ's RFC formulation is not supported by substantial evidence.**

The posture of this case before the ALJ differs from most cases the undersigned has reviewed. In a majority of these cases, the ALJ analyzes a plaintiff's claim, including formulation of his or her RFC, by reviewing the symptom testimony, the medical evidence of record, and any number of medical source opinions from treating, examining, or consulting professionals. Here, the ALJ had no such medical opinions to rely upon, as the two state-agency consultants who reviewed plaintiff's case at the initial and reconsideration stages did so in error.[3] Without these medical source statements, the ALJ only had plaintiff's medical file and his symptom testimony to rely upon, as plaintiff did not submit any other source statements from any treating, examining, or consulting physicians. The question is, then, whether the ALJ's reliance primarily on the medical record evidence in formulating the RFC meets the "substantial evidence" standard.

Plaintiff argues the lack of any medical opinions cuts against such a finding, as he maintains the ALJ is not allowed to translate "raw medical data into functional terms." Plaintiff relies on such persuasive cases as Vaughn v. Berryhill, wherein Magistrate Judge Austin found error in the ALJ's substitution of his own lay opinion for that of the plaintiff's medical experts. 242 F.Supp.3d 998, 1008-09 (E.D. Cal. 2017) (citing, among other cases, Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("[As a lay person, the ALJ is] not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion; [he is] simply not qualified to interpret raw medical data in functional terms.")). Plaintiff's cases are distinguishable, however, as it appears that in Vaughn (and others), the ALJ prioritized his or her opinion over other physicians' opinions in medical source statements. See Vaughn, 242 F.Supp.3d at 1009 ("In this instance, because the ALJ rejected the *treating physicians' and the chiropractor's*

---

[3] As the ALJ noted, these two consulting physicians incorrectly determined plaintiff's last date insured was two years prior to the actual date, and so each denied plaintiff's claim because there was insufficient evidence to show he had an impairment prior to 2015. However, the records clearly demonstrated that plaintiff's claim extended through 2017, and the bulk of the medical records were from the period between 2015 and 2017. Thus, the ALJ correctly gave the opinions of these two consulting physicians little weight.

5

*opinions*, he independently interpreted these most recent medical records and devised a sedentary RFC without crediting a medical expert who reviewed all of the medical evidence.") (emphasis added). And, as other courts have noted, an ALJ has the power to "make a disability determination without [medical source statements] in the record." See Deanna M. v. Berryhill, 2019 WL 988691, at *4 (C.D. Cal. Jan. 3, 2019) ("[A]n ALJ properly may evaluate medical evidence and translate it into an RFC assessment in the absence of a medical opinion specifically pertaining to the limitations caused by a claimant's impairments."); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . ., the final responsibility for deciding these issues is reserved to the Commissioner.").

Here, there are no such source statements, as the only two in the record were properly rejected. And at first blush, it appears that the ALJ performed a thorough review of the medical record evidence in formulating plaintiff's RFC. There are multiple citations to places in the record where plaintiff's physicians noted his treatment plan, his progress, and other such data. However, upon closer inspection, it appears that almost all of these citations are used by the ALJ solely to refute plaintiff's symptom testimony. For example, at AT 17-18, the ALJ stated:

> [W]hile the treatment records have been minimal from the claimants alleged onset date of November 15, 2015 through his date last insured on December 31, 2017, these same records do not support the claimants allegations regarding the worsening of his physical impairments and related symptoms causing him to have functional limitations that impact her ability to work and perform activities of daily living. (Exhibit 2F/1-16; 5F; 6F; 7F/14-19; 10F/1-83; 88-110; 11F/25-30; 40-45; 48-53; 56-59; 13F).

This negating of plaintiff's symptom testimony is repeated throughout the ALJ's "Evaluation of Evidence" section, (see AT 17-20). The use of medical record evidence is certainly within the ALJ's purview when evaluating a claimant's symptom testimony, and the undersigned takes no issue with this part of her analysis. See 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled."). But as to how the ALJ affirmatively supported her

RFC formulation, the undersigned sees no such discussion—not once does the decision explain how the ALJ arrived at a conclusion that plaintiff should be restricted to "medium work . . . [except that he] needed to change positions once per hour for stretch breaks of 5 minutes." The ALJ repeatedly states throughout her "Evaluation of Evidence" that plaintiff's medical records show that he received "minimal and sporadic treatment," that his "alleged impairments have been stable without worsening despite the minimal treatments and minimal use of medications," and that "his overall physical examinations were within normal limits."  (AT 17-20.)  This analysis begs the question:  why not assign an RFC with heavy work (which would match plaintiff's prior work as a truck driver)?  These statements to not convince this "reasonable mind" that her RFC conclusions are well supported.  Edlund, 253 F.3d at 1156.

Viewed in this light, plaintiff's case is similar to Bird v. Berryhill, 1:16-CV-00755-SKO, 2017 WL 3334009, at *9 (E.D. Cal. Aug. 4, 2017).  There, the court noted that "[W]hile the Commissioner regards overall RFC assessments as an administrative determination for the ALJ to make, SSR 96–5p, 20 C.F.R. 404.1527(e), an ALJ's RFC determination nonetheless must be supported by substantial evidence and the reasoning behind the RFC explained."  Id. (citing 42 U.S.C. § 405(b) and 20 C.F.R. § 405.373).  The court continued:

> Here, in making his RFC findings, the ALJ merely described the medical evidence and then stated conclusions, without explaining how he arrived at his conclusions or what evidence supports his conclusions.  No medical opinions specifically endorse the particular limitations the ALJ defined in the RFC assessment. Without adequate explanation of the record, without specific support from an expert source, and without potentially synthesizing testimony from a medical expert, the ALJ apparently defined his own limitations for Plaintiff. This was error.

Id. (citing, among others, Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); Nguyen, 172 F.3d at 35 (1st Cir. 1999) ("As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination.").  As in Bird, the ALJ here must explain how she arrived at her "medium work" formulation, and her failure to do so is error.  Edlund, 253 F.3d at 1156.

Additionally, in her examination of the evidence, the ALJ appears to have glossed over certain records that are supportive of plaintiff's claims. As plaintiff notes in his brief, he was referred to a pain specialist for evaluation. (AT 359.) Dr. Davids noted that conservative treatment failed to resolve plaintiff's spinal issues, and after plaintiff better controlled his diabetes, he was put under sedation and injected with steroids. (AT 359, 355, 577, 548.) Plaintiff testified at the hearing that the injections had been ineffective and he was being considered for further, less conservative treatment. (AT 44-45.) The ALJ does not appear to have addressed the steroid injections or plaintiff's treatment at all, and must (at a minimum) provide specific and legitimate reasons for disregarding this issue. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir.1995); see also Potts v. Colvin, 637 F. App'x 475, 476 (9th Cir. 2016) (finding the ALJ's rejection of, among other things, certain medical records "was based on neither clear and convincing reasons nor specific and legitimate reasons that are supported by substantial evidence in the record.").

Further, set against this analysis, the undersigned is perplexed at the ALJ's stated reliance on the "medical opinion evidence" and "state agency" consultants. (See AT 20 ("The State agency sources and consultative examiners found that the claimant is capable of full range of work of medium work.").) But, as noted above, the ALJ properly rejected the stage agency sources due to the coding error, and there were no other consultative examiners who submitted medical source opinions in this case. This error is likely due to reliance on boilerplate conclusions, but again does not persuade the undersigned that the ALJ devoted the proper amount of time to this decision. Edlund, 253 F.3d at 1156.

Given the combination of the above ambiguities and the odd procedural posture of a record lacking in any medical source opinions, the ALJ would be wise to supplement the record with a consultative examination—so as to obviate future disputes over plaintiff's claims. See, e.g., Deanna M. v. Berryhill, 2019 WL 988691 at * (C.D. Cal. Jan. 3, 2019) ("[A] consultative examination may be required where additional medical evidence is needed to make a disability determination, medical evidence cannot be obtained, technical or specialized evidence is required, or there is a change in the claimant's condition and the current severity of the claimant's

impairment has not been established.") (citing 20 C.F.R. §§ 404.1519 and 416.919).

### B. Plaintiff's Other Claims

Because the court recommends remanding this case for renewed consideration of his RFC, the undersigned dispenses with an exhaustive analysis of the other issues raised in plaintiff's brief—namely, the ALJ's evaluation of plaintiff's symptom testimony. This issue is inescapably linked to conclusions regarding the medical evidence, and as such likely requires re-evaluation of the medical evidence. On remand, the ALJ will have an opportunity to further consider this issues, and address the medical evidence and non-medical testimony in context of the record as a whole. The ALJ will also be free to reevaluate her analysis and/or further develop the record with respect to any or all of these additional issues.

### RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The Commissioner's motion for summary judgment (ECF No. 23) be DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 17) be GRANTED;
3. This matter be REMANDED for further administrative proceedings; and
4. The Clerk be directed to enter judgment in plaintiff's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: June 10, 2020

madr.1421

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE